UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| ROY A.,                                  | NO. 4:23-CV-5055-TOR |
|------------------------------------------|----------------------|
| Plaintiff,                               | ORDER AFFRIMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT |
| v.                                       | |
| KILOLO KITJAKZI, Acting Commissioner of Social Security | |
| Defendant.                               | |

BEFORE THE COURT is Plaintiff's motion for judicial review of Defendant's denial of his application for Title II disability benefits under the Social Security Act (ECF No. 5). This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record, the completed briefing, and is fully informed. For the reasons discussed below, the Commissioner's denial of Plaintiff's application for benefits under Title II of the Social Security Act is AFFRIMED.

//

ORDER AFFRIMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 1

# JURISDICTION

The Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  See 20 C.F.R. §

404.1520(a)(4)(i)–(v).  At step one, the Commissioner considers the claimant's

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

1    "substantial gainful activity," the Commissioner must find that the claimant is not

2    disabled.  20 C.F.R. § 404.1520(b).

3         If the claimant is not engaged in substantial gainful activities, the analysis

4    proceeds to step two.  At this step, the Commissioner considers the severity of the

5    claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

6    from "any impairment or combination of impairments which significantly limits

7    [his or her] physical or mental ability to do basic work activities," the analysis

8    proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

9    does not satisfy this severity threshold, however, the Commissioner must find that

10   the claimant is not disabled.  *Id*.

11        At step three, the Commissioner compares the claimant's impairment to

12   several impairments recognized by the Commissioner to be so severe as to

13   preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

14   404.1520(a)(4)(iii).  If the impairment is as severe, or more severe than one of the

15   enumerated impairments, the Commissioner must find the claimant disabled and

16   award benefits.  20 C.F.R. § 404.1520(d).

17        If the severity of the claimant's impairment does meet or exceed the severity

18   of the enumerated impairments, the Commissioner must pause to assess the

19   claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

20   defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish

that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

On December 3, 2020, Plaintiff applied for Title II disability and disability insurance benefits, alleging on onset date of October 1, 2020.  Administrative Transcript ("Tr.") ECF No. 4 at 22.  Plaintiff generally alleged that he was disabled due to chronic back pain as a result of prior fracture and spinal fusion, sleep disorder, posttraumatic stress disorder, depressive disorder, hypertension, hypogonadism, and sinusitis.  Tr. 26, 36.  The application was initially denied on July 2, 2021, and then upon reconsideration on January 6, 2022.  Tr. 22.  Prior to the hearing, Plaintiff requested a physiological examination through a state agency, which the Administrative Law Judge ("ALJ") denied, finding the record to be adequate with respect to examinations conducted by prior practitioners.  Tr. 22.  By mutual agreement, the ALJ conducted a telephonic hearing on November 17, 2022, with Dr. William Biles appearing as a medical expert, and Mr. Clinton Richmond appearing as a vocational expert.  Tr. 22.  The ALJ denied Plaintiff's claim on December 9, 2022. *See generally*, Tr. 22-43.  Plaintiff's claim was denied on appeal on March 17, 2023.  Tr. 6.

In denying Plaintiff's claim, the ALJ found that Plaintiff had earned $13,121

1    in the fourth quarter of 2020, but that such income may reasonably reflect earnings

2    prior to the alleged date of onset.  Tr. 25.  Additionally, the ALJ noted that Plaintiff

3    had received unemployment benefits during the second quarter or 2020, and from

4    the second through the fourth quarter of 2021.  Tr. 25.  While unemployment

5    benefits do not qualify as substantial gainful employment, in order to receive such

6    benefits, claimants are required to verify their attempts to seek employment and are

7    required to affirm that they are physically able and available for work each day.

8    Tr. 25.  The ALJ ultimately determined that there had been a continuous 12-month

9    period during which Plaintiff did not engage in substantial gainful activity.  Tr. 25.

10           At step two, the ALJ determined that Plaintiff had the following severe

11    impairments: chronic back pain, sleep disorder, posttraumatic stress disorder

12    ("PTSD"), and depressive mood disorder.  Tr. 25.  The ALJ found that the

13    following impairments were not a significant limitation on Plaintiff's ability to

14    perform basic work activities: hypertension, hypogonadism, and sinusitis.  Tr. 26.

15           At step three, the ALJ determined that neither Plaintiff's severe

16    impairments, nor a combination of severe and non-severe impairments met or

17    medically equaled the severity as required by 20 CRF 404.1520(d), 404.1525, and

18    404.1526.  Tr. 26.  In making this determination, the ALJ considered that Plaintiff

19    has not required assistance such as a cane, walker, or crutches when walking and

20    has not required more than three hospitalizations within a 12-month period at least

30 days apart per the requirements of listing 1.15 under 20 C.F.R. § Pt. 404,

Subpart P, App. 1.  The ALJ additionally found that Plaintiff did not establish that

his mental impairment met two marked levels or one extreme level, such that

Plaintiff has limitations in: understanding, remembering, or applying information;

interacting with others, concentrating, persisting, or maintaining pace; or adapting

or managing oneself.  TR. 26.  The ALJ found that Plaintiff has a mild limitation in

remembering and applying information, a moderate limitation in interacting with

others, a moderate limitation with respect to concentrating, persisting, or

maintaining pace, and a moderate limitation in adapting or managing himself.  Tr.

27-8.  Additionally, the ALJ noted that Plaintiff had failed to submit evidence of a

medically documented history of a disorder of at least two years and both "(1)

medical treatment, mental health therapy, psychological support, or a highly

structured setting that is ongoing and that diminishes the signs and symptoms of

the mental health disorder and (2) minimal capacity to adapt to changes in the

claimant's environment or to demands that are not already part of the claimant's

daily life." Tr. 28.

Because Plaintiff's impairments did not meet or exceed the requirement of

severity, the ALJ considered his RFC.  The ALJ found that the record supported

Plaintiff was capable of light work under 20 CFR 404.1567(b), but can never climb

ladders, ropes, or scaffold, and must avoid all hazards.  Tr. 28.  Further, the ALJ

determined that Plaintiff is capable of routine tasks for two-hour intervals between regularly scheduled breaks, but must have non-collaborative interactions with others.  Tr. 28.  In making a determination at step three, the ALJ noted that Plaintiff's allegations of impairment were not consistent with the level of disability he claimed, but found that evidence supported a reduced residual functional capacity.  Tr. 35.

At step four, the ALJ found that the Plaintiff is unable to perform his past relevant work as a medical equipment repairer.  Tr. 35.

At step five, the ALJ determined that Plaintiff is able to perform work in the national economy based on his age, education, work experience, and residual functional capacity.  Tr. 36.  At the hearing, the vocational expert determined that jobs such as router, housekeeping cleaner, and marker, exist in great numbers in the national economy and Plaintiff would be able to perform them given his residual functional capacity.  Tr. 36-7.

Given the steps above, the ALJ determined that Plaintiff was not disabled.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying his application for Title II disability and disability insurance.  Plaintiff raises the following issues on review:

//

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 9

I.      Whether the ALJ erred in considering evidence presented from doctors, nurse practitioners, and a physical therapist as it relates to Plaintiff's impairments and his ability to work, including PTSD, sleep disorders, and back pain.

II.     Whether the ALJ's RFC finding is supported by substantial evidence.

ECF No. 5 at 1.

## DISCUSSION

## I.      The ALJ's consideration of evidence presented by doctors, nurse practitioners, and a physical therapist.

Plaintiff contends that the ALJ erred by "rejecting and ignoring opinions from multiple medical providers and a physical therapist." ECF No. 5 at 7. Specifically, the Plaintiff alleges that the ALJ erred in rejecting the opinions and evidence presented from Dr. Cheta Nand, Sara Stewart, ARNP, Dr. Marie Carmel Desire with Dr. Farrukh Hashmi, and examinations conducted by Johnny Liner, NP, and Rod Strom, physical therapist. ECF No. 5 at 8, 11, 13, and 16.

As Plaintiff's alleged onset date was October 1, 2020, the new regulations for how an ALJ must evaluate medical opinion evidence under Titles II is controlling. See 20 C.F.R. § 404.1520c (governing medical opinion evidence under Title II); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017), available at 2017 WL 168819. An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative

medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)–(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include; supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(1)–(5).

The ALJ is required to explain how the two most important factors, supportability and consistency, were considered. 20 C.F.R. § 404.1520c(b)(2). These factors are defined as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§

404.1520c(b)(2).  However, where two or more medical opinions or prior

administrative findings "about the same issue are both equally well-supported ...

and consistent with the record ... but are not exactly the same," the ALJ is required

to explain how "the most persuasive factors" were considered.  20 C.F.R. §§

404.1520c(b)(2).

These regulations displace the Ninth Circuit's standard that require an ALJ

to provide "specific and legitimate" reasons for rejecting an examining doctor's

opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

*A. Dr. Cheta Nand*

Plaintiff asserts that the ALJ improperly rejected as conclusory a letter

written by Dr. Nand discussing Plaintiff's ability to perform work on a consistent

basis.  ECF No. 5 at 11.  In the December 2021 letter, Dr. Nand described the

various sleep disorders for which he has treated Plaintiff since 2016, and how they

affect his ability to perform work.  ECF No. 4 at 829.  He discussed how Plaintiff's

sleep apnea, narcolepsy, hypersomnia, and insomnia have been confirmed by sleep

analysis testing, including a sleep analysis test done at Pinnacle Sleep and Wake

Disorder Center in 2016, and are supported by the Department of Veteran Affair's

("VA") findings.  *Id;* ECF No. 4 at 1042.  According to Dr. Nand, Plaintiff has

difficulty falling asleep and tolerating his CPAP due to "mental health conditions."

*Id.*  Ultimately, Dr. Nand stated that, in his medical opinion, Plaintiff's conditions

1   relating to sleep have "deteriorated to the point that he has not been able to sustain

2   full-time work since October 2020." *Id*.

3       Plaintiff argues that the ALJ selectively cited to a singular line of Dr. Nand's

4   letter and disregarded the evidence in the record, including from the VA, that

5   supports the conclusions Dr. Nand reaches.  ECF No. 5 at 1.  The ALJ's

6   determination that Dr. Nand's letter is not persuasive is supported by 20 C.F.R. §

7   404.1520b.  "'The administrative law judge is not bound by the uncontroverted

8   opinions of the claimant's physicians on the ultimate issue of disability, but he

9   cannot reject them without presenting clear and convincing reasons for doing so.'"

10  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Matthews v.*

11  *Shalala*, 10 F.3d 678 (9th Cir.1993)).  The ALJ concluded that the letter contained

12  no function-by-function analysis of the Plaintiff's ability to perform work tasks,

13  and thus is justified in rejecting Dr. Nand's opinion on the ultimate issue of fact as

14  not helpful to the overall determination and as a question left to the Commissioner.

15      Further, Dr. Nand's letter references the sleeping analysis testing that

16  Plaintiff underwent but does not connect the findings of the ultimate disability to

17  the results of the sleep study.  ECF No. 4 at 829.  Both Dr. Nand's letter and

18  Plaintiff argue that Plaintiff's alleged disability associated fatigue from his sleep

19  disorder is supported by the VA's recognition that Plaintiff is disabled.  *Id*.  Here,

20  the ALJ declined to extend the disability finding of the VA under 20 CFR

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE II OF THE SOCIAL SECURITY ACT ~ 13

404.1520b(c)(1) which provides that "decisions by other governmental agencies are nether valuable or persuasive."  As this claim was filed after March 27, 2017, the ALJ did not err in declining to give "great weight" to or superimpose the VA's findings of disability.  Further, the ALJ stated that the evidence supporting the VA's findings was incorporated in the overall five step analysis.  Tr. 33.

### B.  Sara Stewart, ARNP

Sara Stewart, ARNP, examined Plaintiff in connection to his disability benefits determination at the VA.  ECF No. 4 at 912-29.  As a result of an in-person examination and review of Plaintiff's records, Stewart made findings that Plaintiff would miss work 3-4 weeks per year due to sinus infections and that he would leave work early six times per month due to sinus headaches.  ECF No. 4 at 920.  Additionally, she made a finding that Plaintiff suffered with sleep apnea and "has not been able to work since 10/2020 due to extreme daytime fatigue due to only sleeping 2-3 hours a night."  ECF No. 4 at 923.  As part of her examination regarding sleep apnea, Stewart noted that plaintiff described his restless sleep resulting in only 2-3 hours of sleep per night and referred to the sleep study conducted in 2016.  *Id*. at 928, 929.

Plaintiff asserts that the ALJ improperly rejected Stewart's findings because a sleep apnea test is "objective evidence" and "[i]t is also logical that a person cannot function in the workplace with only 2-3 hours of sleep each night."  ECF

1    No. 5 at 11-12.  Additionally, Plaintiff argues that the ALJ erroneously gave more

2    weight to physicians that have never interacted with Plaintiff, while dismissing the

3    findings of Stewart because she was not actively treating for sleep related

4    disorders.  *Id.* at 12.  Finally, the Plaintiff objects to the ALJ's analysis of

5    Plaintiff's removal of his CPAP device, asserting that the ALJ should have

6    considered that he suffers from anxiety and claustrophobia in determine whether

7    noncompliance with treatment is a contributing factor to Plaintiff's fatigue for

8    purposes of determining disability.  *Id.*

9         The ALJ conducted a proper analysis as set out by 20 CFR § 404.1520c and

10   thus finding Stewart's medical source statements to be unpersuasive was not

11   improper.  As Plaintiff's alleged onset date was October 1, 2020, the new

12   regulations for how an ALJ must evaluate medical opinion evidence under Titles II

13   is controlling.  *See* 20 C.F.R. § 404.1520c.  Here, the ALJ rejected the evidence

14   provided from Stewart's examination because it was "speculative in nature and

15   [did] not provide clear, objective statements in support of these absences," and

16   therefore lacked "necessary support with objective medical evidence and are

17   similarly inconsistent with the objective medical records."  Tr. 35.  Specifically,

18   the ALJ noted that sinusitis is reasonably treated with medication, that the

19   statements made about Plaintiff's fatigue were derived from interviewing Plaintiff,

20   not an objective source, and that Stewart's report does not mention non-

compliance with the CPAP device to aid in sleep. *Id.*

Plaintiff takes issue with the ALJ's disregard of Stewart's mention of the 2016 sleep study in her examination of Plaintiff on July 28, 2021. However, the record does not reflect that Stewart was involved in the study, and she instead reviewed it as part of her overall review of Plaintiff's condition. Further, she was not Plaintiff's medical provider for disordered sleep treatment. In reviewing the record as set forth, the ALJ was justified in finding, as an examining medical opinion, Stewart lacked the long-term exposure to properly assess Plaintiff's limitations related to sleep disorders.

Plaintiff also contends that the ALJ, in rejecting Stewart's analysis of Plaintiff's fatigue related limitations, improperly did not mention why Plaintiff removes his CPAP at night. ECF No. 5 at 12. In her finding, Stewart notes that Plaintiff sleeps 2-3 hours per night due to constant awakening from, among other things, PTSD, anxiety, and claustrophobia from his CPAP machine. ECF No. 4 at 922.

A claimant's course of treatment and any other measures taken to relieve symptoms are relevant factor in considering the severity of symptom allegations. 20 C.F.R. §§ 404.1529(c)(3); see also *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). A

1    claimant's "unexplained, or inadequately explained, failure to seek treatment or

2    follow a prescribed course of treatment" can undermine symptoms reports.  *Fair v.*

3    *Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).

4         Plaintiff argues that, because he has presented a good reason for not

5    complying with noted treatment for his condition, the ALJ should not take

6    noncompliance into account.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.

7    1996).  However, the ALJ offered specific and clear reasons for discounting

8    Plaintiff's fatigue and Stewart's analysis, including that in his testimony before the

9    ALJ, Plaintiff had denied taking naps during the day, that other aid has been

10   offered to Plaintiff for his sleep disorders, and that, because Stewart's analysis is

11   predicated upon a review of records and Plaintiff's own self-reports, she lacked the

12   longevity and in-depth time with Plaintiff to opine on his sleep-related disorders.

13   Tr. 31, 35; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v.*

14   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at

15   604 (supporting the conclusion that a physician's opinion may be reject if based on

16   a claimant's subjective complaints which were properly discounted).

17        The ALJ did not err in concluding that the Stewart's findings are not

18   persuasive given that they were not supported by or and consist with the record as

19   a whole as set out by the framework of 20 C.F.R. § 404.1520c(b)(2).

20   //

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE II OF THE SOCIAL SECURITY ACT ~ 17

1    *C. Dr. Marie Carmel Desire*

2    Dr. Desire conducted a PTSD assessment for VA disability benefits on July

3    5, 2021, and ultimately found that Plaintiff has occupational and social

4    impairments with reduced reliability and productivity.  ECF No. 4 at 882.  Dr.

5    Desire based this finding on Plaintiff's examination in which he described

6    traumatic events of witnessing an aircraft crash in 1994, killing close friends, as

7    well as events surrounding a relief mission in 1992 after Hurricane Andrew.  *Id*. at

8    884.  During his examination, Plaintiff noted that he experiences "intrusive

9    thoughts, flashbacks, nightmares, sleep trouble, anxiety, panic attacks, depressed

10    mood, avoidance, hypervigilance, [and] easy startling," as well as the occasional

11    "mood activation."  *Id*. at 883.  Dr. Desire also noted treatment conducted by Dr.

12    Farrukh Hashmi, who had seen Plaintiff on five separate occasions, and his

13    diagnosis of bipolar disorder, hypersomnia, narcolepsy, and PTSD.  *Id*.

14    Plaintiff argues that the ALJ did not credit the entire report done by Dr.

15    Desire in the PTSD assessment, and that the ALJ did not consider Dr. Hashmi's

16    findings.  ECF No. 5 at 14.  According to Plaintiff, the ALJ should have taken into

17    account that Plaintiff satisfied the PTSD "diagnostic criteria," which includes the

18    presence of intrusion symptoms associated with traumatic events, persistent

19    avoidance of stimuli, negative alterations in cognitions and mood, and reactivity.

20    ECF No. 5 at 14, ECF No. 4 at 892.  Additionally, Plaintiff argues the ALJ was in

error by failing to mention Dr. Hashmi's report, which indicated that Plaintiff had been diagnosed with bipolar disorder and PTSD. ECF No. 5 at 14, ECF No. 4 at 465.

However, the ALJ's findings took into account Plaintiff's mental health related limitations, requiring the Plaintiff able to "adapt to simple, routine changes in the work setting. Interactions with the public and coworkers must be brief and superficial, meaning non-collaborative interactions." Tr. 28. Defendant notes that because Dr. Desire's assessment is devoid of any vocational-related language as to how Plaintiff would be impaired in the workplace, the ALJ may treat the findings as "other medical evidence." ECF No. 10 at 7, 20 C.F.R. § 404.1513(a)(3). The Court agrees. Similar to the findings of Dr. Nand, the ALJ found that Dr. Desire's medical opinion to be unpersuasive as it reached conclusory results because it did not provide any functional analysis of Plaintiff's limits. *Id.* Dr. Desire's report lists various symptoms, and ultimately made a findings of PTSD, but the Court concurs that it lacks an overall vocational element to be persuasive in the ALJ's findings. ECF No. 4 at 886.

Additionally, the ALJ did incorporate in Plaintiff's overall residual functional capacity the reports of Dr. Hashmi, determining that the results were consistent with the findings of psychological analysis performed during Plaintiff's application for disability. Tr. 33-4.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 19

Therefore, the ALJ was not in error in the amount of consideration given to the opinions of Dr. Desire and Dr. Hashmi.

*D. Nurse Practitioner Johnny Liner and Physical Therapist Rod Strom*

Johnny Liner, a nurse practitioner, conducted an examination for VA disability benefits on July 8, 2021.  ECF No. 4 at 889.  As part of the examination, Liner reviewed records and gave an in-person examination to determine that Plaintiff's back pain and prior injury would impact his ability to perform any type of occupational task.  ECF No. 4 at 906.  Specifically, Liner found that Plaintiff experienced lumbar and thoracic weakness, stiffness, would require frequent repositioning when sitting, and is unable to tolerate sustained standing with needed time to sit and rest.  ECF No. 4 at 897-8.

Additionally, Rod Strom, a physical therapist, conducted a physical examination of Plaintiff on November 15, 2021.  ECF No. 4 at 762.  In his determination, Strom found that Plaintiff was able to perform light work on a full-time basis but noted that he would shift from side to side while sitting and needed to stand intermittently.  *Id* at 763.  Strom ultimately concluded that Plaintiff was able to sit for 30 minutes at a time each without restriction, around 3 hours in an 8-hour day; Plaintiff was able to stand for 30 minutes at a time without restriction, around 4 hours in an 8-hour day; and Plaintiff was able to walk 20 minutes at a time without restriction, around 4 hours in an 8-hour day.  ECF No. 4 at 761.  In

total, Strom found that plaintiff can sit/stand/walk without restriction for 8 hours in an 8-hour day.  *Id.*

Additionally, Plaintiff was found to have dexterity functional for daily use, but that he fell below average (3rd to 26th percentile) and thus would not be "competitive in a fast pace working environment requiring the rapid manipulation of small parts."  *Id.*

Plaintiff argues that the ALJ did not take the sit/stand limitation or below average dexterity into account when determining that Plaintiff can perform light work.  And, that the ALJ failed to mention mental health and pain symptoms.  ECF No. 5 at 18.

However, the ALJ properly took into account the findings of both Liner and Strom in deciding limitations Plaintiff would face in performing work.  The ALJ's finding that Plaintiff is able to perform light work is supported by the vocational nature of both examinations, and the ALJ's determination that the assessments were consistent with the record as whole.  Tr. 32.  As to the dexterity issue, the ALJ's finding made no indication that Plaintiff should be required to perform work that requires a fast-paced environment that deals with the manipulation of small parts.

Therefore, the ALJ did not err in weighing the assessment of either Strom or Liner, and properly incorporated them within the record as a whole.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 21

## II.    The ALJ's RFC findings

Plaintiff takes issue with the ALJ's finding that Plaintiff has a residual functional capacity to perform light work, such as what is defined in 20 C.F.R. 404.1567(b).  Tr. 28, ECF No. 5 at 20.  Plaintiff asserts that the ALJ did not consider the entire record as whole when making an RFC determination, including PTSD, Bipolar Disorder, Sleep Disorders, and back pain.  ECF No. 5 at 20. Further, Plaintiff argues that ALJ's reliance on a seemingly waning of symptoms in the finding of Plaintiff's RFC was improper.

However, as noted above, the ALJ did in fact account for the entire record and made an appropriate RFC finding that reflected Plaintiff's abilities given his documented limitations.  Specifically, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can perform postural activities occasionally but can never climb ladders, ropes, or scaffolds. He must avoid all hazards, such as unprotected heights. He is able to understand, remember, and carry out simple, routine tasks and instructions and can maintain concentration, persistence and pace for those tasks for two-hour intervals between regularly scheduled breaks. He can adapt to simple, routine changes in the work setting. Interaction with the public and coworkers must be brief and superficial, meaning non-collaborative interactions.

Tr. 28.

The Court finds that the ALJ's determination is well supported and reflected in the record.  Plaintiff contends that the finding does not reflect his mental health

history, sleep disorders, or his physical symptoms surrounding back pain.

However, the ALJ systematically engaged in the two-step process required to

determine whether the Plaintiff is disabled.  SSR 16-3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is 'objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged.'"  *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*,

572 F.3d 586, 591 (9th Cir. 2009)).  "The claimant is not required to show that [the

claimant's] impairment 'could reasonably be expected to cause the severity of the

symptom [the claimant] has alleged; [the claimant] need only show that it could

reasonably have caused some degree of the symptom.'"  *Vasquez*, 572 F.3d at 591

(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

The ALJ made a detailed analysis of Plaintiff's backpain, including the

functional analysis as detailed above, and included discussion of his abilities to

perform work-related activities given his pain.  Tr. 30.  In support of this finding,

the ALJ cited to, among other pieces of evidence, record produced for the VA's

disability determination, the examination conducted by Johnny Liner, and reports

from physical therapy.  *Id.*  Together with the functional capacity evaluation

conducted in 2021, the ALJ determined that the level of limitation expressed by

Plaintiff was not consistent with the record overall.  *Id* at 32.

//

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE II OF THE SOCIAL SECURITY ACT ~ 23

The ALJ also gave a detailed discussion of Plaintiff's sleep disorders, including a brief aside about Plaintiff's hostility when told that controlled substances could not be prescribed for sleep assistance, and his non-compliant use of his prescribed CPAP device. Tr. 31. The Court agrees that non-compliance with prescribed sleep aids undercuts the alleged severity of Plaintiff's symptoms.

Finally, the ALJ included record support in discussing Plaintiff's mental impairments. *Id*. Specifically, the ALJ determined that Plaintiff's depression and PTSD is being managed in counseling, and that Plaintiff had been prescribed medication which was only taken sporadically. *Id*. Further, the ALJ found that Plaintiff has continued to deny depressive episodes and is able to maintain daily life. *Id*.

## Conclusion

Having reviewed the record and the findings of the ALJ, the Court concludes that there was no error in the ALJ's decision.

//

//

//

//

//

//

ORDER AFFRIMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 24

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief (ECF No. 5) is **DENIED**.

2. Defendant's Response Brief (ECF 10) is **GRANTED**. The final decision
   of the Commissioner is **AFFIRMED**.

The District Court Executive is directed to enter this Order and Judgment
accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED November 3, 2023.



THOMAS O. RICE
United States District Judge

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE II OF THE SOCIAL SECURITY ACT ~ 25